IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APPLICATION AND AFFIDAVIT OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT AUTHORIZING THE SEIZURE OF APPROXIMATELY $60,000 OF UNITED STATES CURRENCY CURRENTLY LOCATED IN A PENNSYLVANIA STATE POLICE YELLOW EVIDENCE ENVELOPE | Magistrate No. 21-1113 **[UNDER SEAL]** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
UNDER RULE 41 FOR A WARRANT TO SEIZE
BY ELECTRONIC OR OTHER RELIABLE MEANS**

I, Adam E. Gaab being duly sworn, depose and state the following:

**I.     INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the USPS-OIG and have been so employed since August 2017.  As part of my duties, I am assigned to the Pittsburgh Resident Office, with an assigned territory of the Western Judicial District of Pennsylvania.   My responsibilities include investigations of narcotics, specifically pertaining to violations committed by employees of the United States Postal Service ("USPS").  Prior to working as a Special Agent with the USPS-OIG, I worked as a Special Agent with the United States Secret Service (USSS), where I was employed from January 2010 to August 2017.  As a Special Agent with the USSS, I was responsible for investigations of financial crimes such as access device fraud, bank fraud and forgery.  I also assisted with investigations dealing with the possession, manufacturing, and distribution of controlled substances.  I have assisted in undercover operations and executed various search and arrest warrants.  I have debriefed informants.  Before becoming a Special Agent, I received training at the Federal Law Enforcement Training Center (FLETC), where I was trained in narcotics trafficking, money laundering, undercover operations, confidential informants, and electronic and

physical surveillance techniques.  The following information has been obtained by me personally or has been provided to me by postal employees and other law enforcement officers.

2.      I am currently assigned to the DEA Pittsburgh Airport Office Group 63 and have been so employed since December 2019.  As a Task Force Agent, your Affiant has participated in a number of narcotics and money laundering investigations, which have resulted in the seizure of illegal drugs and evidence of drug violations, as well as the seizure of assets acquired with drug proceeds.   Your Affiant has conducted covert surveillance of suspected drug traffickers on numerous occasions, interviewed numerous individuals involved in the drug trafficking trade, participated in the execution of numerous search and arrest warrants, assisted in the arrest of drug traffickers, and assisted in the seizure of controlled substances.  Based upon the above experience, your Affiant is familiar with the modus operandi of persons involved in illicit distribution of controlled substances, as well as the terminology used by persons involved in the illicit distribution of controlled substances.  Your Affiant is aware that persons involved in the illicit distribution of controlled substances routinely attempt to conceal their identities, as well as the location at which drug transactions take place.

3.      Experience and drug trafficking intelligence have demonstrated that U.S Mail Priority Mail Express and Priority Mail, and United Parcel Service (UPS) parcels are commonly used to transport drugs and drug proceeds because of their reliability and the time constraints they place on law enforcement agents to execute a successful controlled delivery.

4.      I have been involved in the investigation and discovery of drug contraband and drug proceeds.  I have personally been the affiant for search warrants, including a warrant which has resulted in the discovery of controlled substances and drug proceeds.  My current assignment involves investigating the use of the U.S. Mail by drug traffickers, in which established drug

package profiles, surveillance, and drug detection dogs, among other investigative tools, are utilized.

5.      The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other individuals, review of records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, this affidavit does not set forth each and every fact learned by me during the course of this investigation.

## II.   <u>**PURPOSE OF THIS AFFIDAVIT AND THE PROPERTY TO BE SEIZED**</u>

6.      This affidavit is submitted in support of a warrant authorizing the seizure approximately $60,000 of United States currency, which is currently located in a Pennsylvania State Police yellow evidence envelope.  As set forth below, there is probable cause to believe that the approximately $60,000 of United States currency is subject to seizure by and forfeiture to the United States pursuant to 21 U.S.C. § 853(a), (e), and (f); 21 U.S.C. § 881(a)(6) and (b); and 18 U.S.C. § 981(b) as: (1) property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of a violation of the Controlled Substances Act; and (2) money furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of the Controlled Substances Act.  Your Affiant also has probable cause to believe that the approximately $60,000 of United States currency is subject to seizure and criminal/civil forfeiture under Title 18, United States Code, Sections 981 and 982, because it was involved in and/or are

traceable to violations of Title 18 U.S.C., Sections 1956 and/or 1957, by members of the HILLEBRAND Drug Trafficking Organization ("HILLEBRAND DTO").

7.      Based on my training, experience, and knowledge of the investigation, I believe that the approximately $60,000 of United States currency was seized from a parcel that possessed characteristics of other seized parcels that are associated with a drug trafficking organization operating in the Western District of Pennsylvania (and elsewhere), which is led in the Western District of Pennsylvania by Derek HILLEBRAND.  For the reasons set forth below, including the intercepted communications, your Affiant submits that the approximately $60,000 of United States currency is associated with the HILLEBRAND DTO.

8.      This Court is empowered to issue a seizure warrant for any property subject to forfeiture pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f).

**III.      PROBABLE CAUSE**

   **A.  Background of the Investigation**

9.      A joint investigation conducted by the Drug Enforcement Administration (DEA), United States Postal Service – Office of Inspector General (USPS-OIG), Pennsylvania State Police (PSP), Homeland Security Investigations ("HSI"), and the United States Postal Inspection Service (USPIS) has revealed the HILLEBRAND DTO is an organization that is responsible for the trafficking and distribution of large amounts of methamphetamine and marijuana from California/Nevada to Pennsylvania through the United States Postal Service ("Postal Service") and United Parcel Service (UPS).  The HILLEBRAND DTO also transports narcotics proceeds from the distribution of controlled substances via the Postal Service to the Stockton/Modesto/Manteca, CA area from Pennsylvania. Agents have reviewed characteristics of dozens of suspicious parcels as well as intercepted communications, as set forth below.  Based on that information, Investigators

believe that the Organization's parcels typically have similar characteristics, such as the mail type (i.e., priority U.S. Mail or UPS), origin (i.e., Western Pennsylvania), destination (i.e., Stockton/Modesto/Manteca), the method of postage payment, and the destination/return mailing addresses.

**B. Intercepted Communications**

10.     To further the investigation, Investigators obtained authorization to intercept the following phones:

a. On November 24, 2020, Chief United States District Judge Mark R. Hornak, Western District of Pennsylvania, at Misc. No. 20-1594, authorizing the initial interception of wire and electronic communications occurring over 470-330-0246 (TARGET TELEPHONE 1) and 814-590-6231 (TARGET TELEPHONE 2), both utilized by Derek HILLEBRAND ("HILLEBRAND"). Investigators continued to monitor the lines until 11:59 PM on December 13, 2020, at which point Investigators ceased monitoring the lines;

b. On December 22, 2020, Chief United States District Judge Mark R. Hornak, Western District of Pennsylvania, at Misc. No. 20-1594(a), authorizing the initial interception of wire and electronic communications occurring over 617-352-9880 (TARGET TELEPHONE 3), which was utilized by HILLEBRAND. The order expired at midnight on January 20, 2021, 30 days after the interception of communications began.

c. On January 27, 2021, Chief United States District Judge Mark R. Hornak, Western District of Pennsylvania, at Misc. No. 20-1594(b), authorizing the

renewed interception of wire and electronic communications occurring over 814-590-6231 (TARGET TLEEPHONE 2), utilized by HILLEBRAND; authorizing the initial interception of wire and electronic communications occurring over 209-401-5074 (TARGET TELEPHONE 4), utilized by George CHARLAND ("CHARLAN"); authorizing the initial interception of wire communications occurring over 814-232-5100 (TARGET TELEPHONE 5), utilized by Yusuf ADEKUNLE ("ADEKUNLE"); and authorizing the initial interception of wire and electronic communications occurring over 814-661-0321 (TARGET TELEPHONE 6), utilized by Ryan SCHOENING ("SCHOENING'). The interception of those wire and electronic communications began on January 27, 2021 and expired at midnight on February 25, 2021, 30 days after the interception of communications began.

d. On February 22, 2021, Chief United States District Judge Mark R. Hornak, Western District of Pennsylvania, at Misc. No. 20-1594(c), authorizing the renewed interception of wire and electronic communications occurring over 209-401-5074 (TARGET TELEPHONE 4), utilized by CHARLAN; authorizing the initial interception of wire and electronic communications occurring over 412-216-0999 (TARGET TELEPHONE 8), utilized by CHARLAN; authorizing the initial interception of wire communications occurring over 209-641-2752 (TARGET TELEPHONE 7), utilized by MALDONADO. The interception of those wire and electronic

communications began on February 23, 2021 and expired at midnight on March 24, 2021, 30 days after the interception of communications began.

e.  On April 7, 2021, Chief United States District Judge Mark R. Hornak, Western District of Pennsylvania, at Misc. No. 20-1594(d), authorizing the renewed interception of wire and electronic communications occurring over 412-216-0999 (TARGET TELEPHONE 8), utilized by CHARLAN; authorizing the initial interception of wire and electronic communications occurring over 209-277-4531 (TARGET TELEPHONE 9), utilized by Armando RAZO Jr (RAZO).  The interception of those wire and electronic communications over 412-216-0999 began on April 7, 2021 and is scheduled to expire at midnight on May 6, 2021, 30 days after the interception of communications began. The interception of wire and electronic communications over 209-222-4531 began on April 8, 2021 and was scheduled to expire at midnight on May 7, 2021, 30 days after the interception of communications began.  However, from April 8, 2021 through April 21, 2021, there no communications were intercepted over 209-277-4531. Because there were no intercepted communications, agents terminated the wiretap, and the discs for TARGET TELEPHONE 9 were sealed on April 21, 2021.

f.  On May 5, 2021, Chief United States District Judge Mark R. Hornak, Western District of Pennsylvania, at Misc. No. 20-1594(e), authorizing the initial interception of wire and electronic communications occurring over 209-688-5707 (TARGET TELEPHONE 10), utilized by Marco

ARMENTA ("ARMENTA") and over 209-405-0278 (TARGET TELEPHONE 11), utilized by RAZO. The interception of those wire and electronic communications began on May 5, 20201 and are scheduled to expire at midnight on June 4, 2021, 30 days after the interception of communications began.

**C. Historical Money Parcels**

11.     Pursuant to those Orders, agents intercepted the following communications, which further evidences that the parcel which contained the approximately $60,000 was shipped by members of the HILLEBRAND DTO and that its contents likely contain narcotics proceeds.

12.     During the course of the Investigation, interceptions have revealed that MALDONADO is responsible for retrieving parcels containing drug proceeds and delivering the parcels to CHARLAN. Through intercepted communications, Investigators learned that CHARLAN and MALDONADO followed a similar pattern of communication for over thirty boxes between late January of 2021 and late April of 2021. Those communications also revealed that MALDONADO arranged to the have the parcels containing drug proceeds mailed to himself, his relatives, or his known associates either directly to their residences or to post office boxes purchased in their names. Specifically, parcels containing drug proceeds or payment for narcotics have been sent to "Lisandro MALDONADO." Investigators have learned during the investigation that MALDONADO and his wife, Lisandra MALDONADO ("LIZ MALDONADO") reside together at 351 S. Cardinal Avenue, Stockton CA 95215. Communications intercepted over TARGET TELEPHONE 7 revealed that LIZ MALDONADO is aware of MALDONADO's illicit activity and is an active participant. Below are a few selected examples of those text communications.

**February 2021 Parcel**

13.     On February 25, 2021 at approximately 10:36 AM, MALDONADO using TARGET TELEPHONE 7, received an incoming text message from CHARLAN, using TARGET TELEPHONE 8, stating, "All good.  Looks like 3 packs will be there today."  Based on your Affiant's training, experience, and knowledge of this investigation, I believe that CHARLAN was informing MALDONADO that three parcels containing drug proceeds would be arriving and needed to be picked up by MALDONADO.

14.     On February 25, 2021, at approximately 11:12 AM, MALDONADO, using TARGET TELEPHONE 7, sent an outgoing text message to CHARLAN, using TARGET TELEPHONE 8, stating, "Il keep an eye on them."  Based on your Affiant's training, experience, and knowledge of this investigation, I believe that MALDONADO confirmed that he would need to pick up the three parcels.

15.     On February 25, 2021, at approximately 12:00 PM, MALDONADO, using TARGET TELEPHONE 7, sent an outgoing text message to LIZ MALDONADO, using (209) 623-6407, stating, "I got 3 packs tp puck up il see what my time is."  Based on your Affiant's training, experience, and knowledge of this investigation, I believe that MALDONADO was informing LIZ MALDONADO that MALDONADO had to pick up the three parcels containing drug proceeds referenced in the communications above with CHARLAN.

16.     On February 25, 2021, at approximately 12:03 PM, MALDONADO, using TARGET TELEPHONE 7, received an incoming text message from LIZ MALDONADO, who responded to MALDONADO's text by "Liking" the text message.  Based on your Affiant's training, experience, and knowledge of this investigation, I believe that LIZ MALDONADO was acknowledging that MALDONADO was picking up three parcels containing drug proceeds.

17.     For example, on February 24, 2021, at approximately 12:49 AM, MALDONADO, using TARGET TELEPHONE 7, received an incoming text message from CHARLAN, using TARGET TELEPHONE 8, stating,

> "9505 5158 3961 1054 1861 05
>
> Liz manteca."

18.     Based on your Affiant's training, experience, and knowledge of this investigation, I believe that CHARLAN was informed MALDONADO that a parcel containing drug proceeds was being shipped to Manteca, CA in LIZ MALDONADO's name with tracking number 9505 5158 3961 1054 1861 05.

19.     On February 25, 2021, at approximately 5:25 PM, MALDONADO, using TARGET TELEPHONE 7, sent an outgoing text message to CHARLAN, using TARGET TELEPHONE 8, stating,

> "21000 spence stk
>
> 54400 liz
>
> 22100 silv"

20.     Based on your Affiant's training, experience, and knowledge of this investigation, I believe that MALDONADO confirmed that he had received three boxes containing money, including the one box mailed to LIZ MALDONADO, which contained $54,400.

### March 2021 Parcel

21.     On March 13, 2021 at approximately 12:55 PM, CHARLAN, utilizing TARGET TELEPHONE 8, placed an outgoing text to MALDONADO, utilizing TARGET TELEPHONE 7, stating,

> "9505 5158 3961 1070 1880 91
> Spencer manteca."

22.     Based on your Affiant's training, experience, and knowledge of this investigation, I believe CHARLAN advised MALDONADO that USPS parcel bearing tracking number 9505 5158 3961 1070 1880 91 was going to be delivered that day.  Your affiant is aware the parcel with that tracking number was addressed to Spencer Wreath, PO Box 4381, Manteca, CA 95337, with a return address of Mike Bloom, 13, Lytle Road, Glenn Richy, PA 16837 and  mailed from the Reynoldsville Post Office on March 11, 2021.  The tracking information for the parcel revealed that it was delivered on March 13, 2021.

23.     On March 13, 2021 at approximately 12:55 PM, MALDONADO, utilizing TARGET TELEPHONE 7, placed an outgoing text to CHARLAN, utilizing TARGET TELEPHONE 8, stating, "Is that today?" Based on your Affiant's training, experience, and knowledge of this investigation, I believe MALDONADO asked CHARLAN if the money parcel was going to be delivered that day.

24.     On March 13, 2021 at approximately 1:07 PM, CHARLAN, utilizing TARGET TELEPHONE 8, placed an outgoing text to MALDONADO, utilizing TARGET TELEPHONE 7, stating, "Yea." Based on your Affiant's training, experience, and knowledge of this investigation, I believe CHARLAN advised MALDONADO that the money was going to be delivered that day.

25.     On March 13, 2021 at approximately 2:49 PM, MALDONADO, utilizing TARGET TELEPHONE 7, received an incoming text from LIZ MALDONADO, utilizing 209-623-6407, stating, "Can I go over??" Based on your Affiant's training, experience, and knowledge of this investigation, I believe LIZ MALDONADO was aware that MALDONADO was conducting illegal activity in their home and asked MALDONADO if he was finished so that she could return home.

11

26.     On March 13, 2021 at approximately 2:55 PM, MALDONADO, utilizing

TARGET TELEPHONE 7, placed an outgoing text to LIZ MALDONADO, utilizing 209-623-

6407, stating, "Yes u can I just have to count cash."  Based on your Affiant's training,

experience, and knowledge of this investigation, I believe MALDONADO advised LIZ

MALDONADO that she could return home, but he was counting the United States currency that

was shipped by HILLEBRAND to MALDONADO in the parcel as payment for narcotics.

27.     On March 13, 2021 at approximately 2:56 PM, MALDONADO, utilizing

TARGET TELEPHONE 7, received an incoming text from LIZ MALDONADO, utilizing 209-

623-6407, stating, "Kk" Based on your Affiant's training, experience, and knowledge of this

investigation, I believe LIZ MALDONADO acknowledged MALDONADO was counting

United States currency.

28.     On March 13, 2021 at approximately 3:20 PM, MALDONADO, utilizing

TARGET TELEPHONE 7, placed an outgoing text to CHARLAN, utilizing TARGET

TELEPHONE 8, stating, "54175 spnc man."  Based on your Affiant's training, experience, and

knowledge of this investigation, I believe MALDONADO advised CHARLAN that

MALDONADO received a parcel that contained $54,175 in United States currency as payment

for narcotics.

29.     On March 13, 2021 at approximately 3:22 PM, CHARLAN, utilizing TARGET

TELEPHONE 8, placed an outgoing text to MALDONADO, utilizing TARGET TELEPHONE

7, stating, "54175 spnc man (hilly)." Based on your Affiant's training, experience, and

knowledge of this investigation, I believe CHARLAN confirmed receipt of the parcel and

advised MALDONADO the $54,175 in United States currency that was payment for narcotics

was sent by HILLEBRAND.

**April 2021 Parcel**

30.     On April 12, 2021 at approximately 10:37 PM, MALDONADO, utilizing TARGET TELEPHONE 7, received an incoming text message from CHARLAN, using TARGET TELEPHONE 8, stating,

> "9505 5158 3962 1102 0765 24
> Liz manteca."

31.     Based on your Affiant's training, experience, and knowledge of this investigation, I believe that CHARLAN was informing MALDONADO that a parcel with tracking number 9505 5158 3962 1102 0765 24 containing monetary proceeds was being shipped to LIZ MALDONADO.

32.     On April 14, 2021 at approximately 3:10 PM, MALDONADO, utilizing TARGET TELEPHONE 7, received an incoming text message from CHARLAN utilizing TARGET TELEPHONE 8, stating, "Liz box was delivered in manteca."

33.     Based on your Affiant's training, experience, and knowledge of this investigation, I believe that CHARLAN was informing MALDONADO that the tracking information revealed that the parcel addressed to LIZ MALDONADO containing drug proceeds was delivered in Manteca, CA.

34.     On April 14, 2021 at approximately 10:38 PM, MALDONADO, utilizing 209-641-2752, sent an outgoing text message to CHARLAN utilizing (412)216-0999, stating, "25660 lzbx." Based on your Affiant's training, experience, and knowledge of this investigation, I believe that MALDONADO informed CHARLAN that MALDONADO retrieved the box, and that it contained $25,660 in United States currency.

35.     On April 14, 2021 at approximately 11:04 PM, MALDONADO, utilizing 209-641-2752, received an incoming text message from CHARLAN utilizing (412)216-0999, stating,

"25660 lzbx (hilly).   Based on your Affiant's training, experience, and knowledge of this investigation, I believe that CHARLAN was confirming the amount that the box contained.

### D.  Communications Related to the Seized Parcel

36.    On May 14, 2021 at approximately 4:36 PM, ARMENTA, utilizing TARGET TELEPHONE 10, received an incoming text message from CHARLAN utilizing TARGET TELEPHONE 8, stating, "Hey I've been waiting to get paid from last one. I'll call u later." Based on your Affiant's training, experience, and knowledge of this investigation, I believe CHARLAN advised ARMENTA that CHARLAN was waiting to receive HILLEBRAND's payment for methamphetamine that CHARLAN purchased from ARMENTA during a previous methamphetamine transaction on April 13, 2021 that was subsequently supplied to HILLEBRAND.

37.    On May 14, 2021 at approximately 7:57 PM, ARMENTA, utilizing TARGET TELEPHONE 10, received an incoming call from UM1624 utilizing 209-641-1624.  Below is a transcript of the intercepted call between ARMENTA (MA) and UM1624.

UM1624:      What's up, what's up?

MA:      What's up, bro?

UM1624:      You never called me back yesterday.

MA:      I know, I, I, I asked-- I just, I just talked to my boy right now.

UM1624:      Oh, what did he say?

MA:      Nothing, that he is waiting that, that-- on the last ones. That he is waiting for the money to get here, but he's-- he's almost ready he said. That, and I told him, [U/I] 'cause I, you   know I'm kind of like, you know, if I should go get them or not. I don't wanna be holding onto them, and then not-- and

|  |  |
|---|---|
|  | then not get them. And then he was like "no, no, [U/I] you know?". That he wants them, and I even told him [U/I] let me know, man. 'Cause I can probably get a better number, you know? I only told him that to convince him. |
| UM1624: | Mm-hm. |
| MA: | But no, he says, he says that by today, that, that, that like around 5:00, 6:00 he is gonna tell me. Because he's going to check if he got mail, if he got the money. |
| UM1624: | Yeah. |
| MA: | So, he is just waiting the money for the last ones, everything else is good. |
| UM1624: | Uh-huh. |
| MA: | Only the last five, he's waiting on the money for that. |
| UM1624: | Oh, okay, okay, cool. Well, let's see if we can make it happen either today or tomorrow because I think tomorrow I'm gonna leave early to the ranch, and I'm not coming back-- |
| [Voices overlap] | |
| MA: | What are you doing? |
| UM1624: | I'ma go to the ranch, and I'm not gonna come back till Sunday. |
| MA: | Huh? |
| UM1624: | I said I'ma go to the ranch, and I'm not gonna come back till Sunday. |
| MA: | Okay, okay, are you going to be covering? |
| UM1624: | We are already covering. |
| MA: | Oh, shit. |

15

UM1624:     Yeah.

MA:           [U/I] [Sneezes]

UM1624:     Huh?

MA:           [U/I]

UM1624:     Oh, that-- that one like that too. That, that, that shit, that shit is just better.

MA:           Oh. I'ma give it to that nigga [U/I] fuck it.

UM1624:     Yeah, we're-- would just give it back to him.

MA:           Yeah, well, I'm, I'm right here at the house, and shit. Let's see if-- if-- if he

              knows, and if not [U/I] if he does not want them, so [U/I].

UM1624:     Yeah.

MA:           [U/I] I'll call you back, I'll call in an hour, bro. I'm getting here at the house.

UM1624:     Alright.

        38.    Based on your Affiant's training, experience, and knowledge of this
investigation, I believe ARMENTA advised UM1624 that CHARLAN was waiting to receive
United States currency from CHARLAN to purchase additional methamphetamine ("Nothing, that
he is waiting that, that-- on the last ones. That he is waiting for the money to get here, but he's--
he's almost ready he said.")  I further believe ARMENTA advised UM1624 that CHARLAN would
contact UM1624 around 5PM or 6PM PDT (8PM or 9PM EDT) and that CHARLAN was waiting
for the U.S. currency to be delivered through the mail ("But no, he says, he says that by today,
that, that, that like around 5:00, 6:00 he is gonna tell me. Because he's going to check if he got
mail, if he got the money.")  I believe ARMENTA advised UM1624 that ARMENTA was waiting
on CHARLAN to pay him for the final five pounds of methamphetamine from the previous
methamphetamine transaction on April 13, 2021 when ARMENTA provided CHARLAN with 20

pounds of methamphetamine ("So, he is just waiting the money for the last ones, everything else is good" and "Only the last five, he's waiting on the money for that.")

39.     On May 14, 2021 at approximately 7:57 PM, ARMENTA, utilizing TARGET TELEPHONE 10, received an incoming call from UM1624 utilizing 209-641-1624.  Below is a transcript of the intercepted call between ARMENTA (MA) and UM1624.

MA:        Hey?

UM1624:    What's up, Kenny?

MA:        What's up with that?

UM1624:    What you doing?

MA:        Here, man. In the bay area.

UM1624:    There, man?

MA:        Well, not even bay area. Right here in Saint Andrew.

UM1624:    What you doing out there?

MA:        Uh, I got, fucking have my, my oldest daughter. Said she wanted to come out here.

UM1624:    Oh, that's cool. A little family time?

MA:        A little. Yeah. Why? What's up?

UM1624:    I have your buddy here.

MA:        Oh, he said that not anymore that [U/I] was waiting for the last-, the box, but it didn't arrive. He said that once the box arrives, he's gonna want them. As soon as...

[Voices overlap]

UM1624:     Okay, man. So, I'm going to my ranch, I'm going to my ranch today. I'm not going to have any service or phone, so, I just wanted to make sure that we weren't going to do anything now.

[Voices overlap]

MA:         No, no, no... But, he said that...

[Voices overlap]

UM1624:     Cool.

[Voices overlap]

MA:         For sure, yeah...  "I think no later than Tuesday," he said.

UM1624:     Okay, cool.

MA:         Yeah. He is just waiting for the box to get there.

UM1624:     Okay, done, because I'm not going to have, I'm not going to have service or.

MA:         Oh, yeah? But, um... Well, "Tecatillo" (nickname), I think, is going to want like two, man.

UM1624:     Ah...

[Voices overlap]

MA:         But, uh, it'd be better, well, well, it'd be better when you come.

UM1624:     I will be back tomorrow morning.

MA:         Yeah, man. Tomorrow. I'll tell him that there isn't anything until tomorrow.

UM1624:     It, it's set then.

MA:         Alright, then.

UM1624:     Alright.

40.     Based on your Affiant's training, experience, and knowledge of this investigation, I believe UM1624 advised ARMENTA he had methamphetamine in his possession when he stated "I have your buddy here."  I further believe ARMENTA advised UM1624 that CHARLAN was waiting for a parcel containing United States Currency before ordering more methamphetamine ("Oh, he said that not anymore that [U/I] was waiting for the last-, the box, but it didn't arrive. He said that once the box arrives, he's gonna want them. As soon as....") I believe ARMENTA advised UM1624 that ARMENTA thinks CHARLAN will purchase additional methamphetamine no later Tuesday ("For sure, yeah... 'I think no later than Tuesday,' he said.") I further believe ARMENTA advised UM1624 that CHARLAN was waiting for a parcel containing United States currency that represented payment for methamphetamine ("Yeah. He is just waiting for the box to get there.")

41.     On May 15, 2021 at 11:08 PM, MALDONADO sent a text message TARGET TELEPHONE 7 to RAZO using TARGET TELEPHONE 11, stating, "Hey what's up. Just wanted to let you know were still working on the numbers my freind. Sorry for wait".  Based on my training, experience and knowledge of the case your affiant knows that MALDONADO owes RAZO for previously supplied methamphetamine and was letting RAZO know that MALDONADO was waiting on the money ("numbers") to be shipped via UPS or USPS so MALDONADO could pay RAZO.

**E.  SEIZURE OF THE PARCEL**

42.     On May 18, 2021, Homeland Security Investigations (HSI) Special Agent (SA) Brianna Coleman was notified by HSI Task Force Officer (TFO)/Pennsylvania State Police (PSP) Trooper Josh Giran that TFO Giran had seized a parcel that Investigators believe was sent by members of the HILELBRAND DTO.

43.     On May 14, 2021, TFO Giran received a tip that a parcel may contain bulk US Currency.  TFO Giran seized the parcel at 9:55 PM, and a PSP K9 was brought in and alerted to the parcel at 10:37 PM.  Agents opened the parcel and retrieve United States currency, which was placed into evidence at PSP Pittsburgh under Property Record # B03-11896 and PSP Incident # PA2021-646444.

44.     SA Coleman obtained a photo of the label from the parcel, bearing UPS Next Day Air tracking number: 1ZX299114404380011.  The parcel was addressed to Lisandra Maldonado, at "351 S Cardinal Avenue, Stockton CA 95215-5457."  The parcel had a return address of "MICHELE JACKSON, (814) 590-4032, THE UPS STORE #6758, 250 Commons DR, DU BOIS PA 15801-3808."  The parcel also had a shipment weight of eight pounds.

45.     The parcel was opened, and TFO Giran confirmed that the parcel contained approximately $60,000 in US Currency.

### III.   <u>CONCLUSION</u>

46.     Wherefore, as a result of the foregoing, there is probable cause to believe that the approximately $60,000 of United States currency is property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of a violation of the Controlled Substances Act; and money furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of the Controlled Substances Act; and therefore may be seized for forfeiture pursuant to 21 U.S.C. § 853(a), (e), and (f); 21 U.S.C. § 881(a)(6) and (b); and 18 U.S.C. § 981(b). Your Affiant also has probable cause to believe that the approximately $60,000 of United States currency is subject to seizure and criminal/civil forfeiture under Title 18, United States Code,

Sections 981 and 982, because it was involved in and/or are traceable to violations of Title 18

U.S.C., Sections 1956 and/or 1957, by members of the HILLEBRAND DTO.

The above information is true and correct to the best of my knowledge, information and

belief.

/s/ Adam E. Gaab
Special Agent Adam E. Gaab
U.S. Postal Service – Office of Inspector General

Sworn to before me *telephonically*
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 27th day of May 2021.

_____
HONORABLE LISA PUPO LENIHAN
UNITED STATES MAGISTRATE JUDGE
Western District of Pennsylvania

21